IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| ERIC WILLIAMS, *on Behalf of Himself and All Others Similarly Situated*, | ) ) ) |
| Plaintiff, | ) NO. 3:21-cv-00052 ) |
| v. | ) JUDGE CAMPBELL ) MAGISTRATE JUDGE NEWBERN |
| ROAD SCHOLAR STAFFING, INC. | ) ) |
| Defendant. | ) |

## MEMORANDUM

Pending before the Court is Plaintiffs' Motion for Entry of Default Judgment (Doc. No. 23). Defendant has not filed a response. For the reasons discussed below, Plaintiffs' Motion is **GRANTED** in part.

### I. BACKGROUND

Plaintiff Eric Williams filed this action on January 21, 2021, asserting claims to recover unpaid compensation under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, et seq., and claims for breach of contract and unjust enrichment. (Doc. No. 1). In addition to the named plaintiff, Eric Williams, four individuals filed notice of consent to become party plaintiffs under 29 U.S.C. § 216(b). (Doc. No. 7-1, 8-1, 11-1).

Williams was employed by Road Scholar Staffing from approximately April 2020 through November 2020. (*Id*., ¶ 6). He alleges he and others worked as truck drivers for Defendant Road Scholar Staffing pursuant to employment contracts which entitled them to "mileage pay, certain bonuses, layover pay, detention pay, and driver assist pay, among other compensation." (*Id*., ¶ 12). Williams claims Road Scholar Staffing regularly failed to track the time he and other truck drivers worked and failed to pay them amounts owed under the employment contract for "among other

things: (a) all miles they drove; (b) all time worked; (c) all layover, detention, driver assist, and other forms of compensation earned." (*Id*., ¶ 14). He claims this not only violated the terms of their employment contract, but resulted in their effective hourly pay dropping below the $7.25 minimum wage in some workweeks. (*Id*., ¶ 2).

Williams asserts FLSA and supplemental state law claims for breach of contract and unjust enrichment as a collective action under 29 U.S.C. § 216(b) on behalf of "[a]ll current and former truck drivers employed by Defendant at any time since January 22, 2015." (*Id*., ¶¶ 20, 29-35, 37-43).

Road Scholar Staffing was served with process on February 10, 2021. (Doc. No. 9). To date, Defendant has not responded to the Complaint or otherwise appeared in this action. On May 19, 2021, the Clerk of Court entered an Entry of Default against Defendant for failure to appear or otherwise respond to Plaintiff's Complaint. (Doc. No. 16).

On November 12, 2021, Williams and the four individuals who consented to join the suit as opt-in plaintiffs filed the pending Motion for Entry of Default Judgment. (Doc. No. 23). They request the Court enter default judgment against Road Scholar Staffing in the total amount of $72,173.06, representing unpaid wages and liquidated damages under the FLSA, and damages for breach of contract. (*Id*.). Williams and the four individuals each submitted declarations in support of their claims. (Doc. Nos. 25-29). The Court requested additional briefing on the Court's authority to adjudicate claims by persons other than the named plaintiff and the standard under which the Court should review the claims for damages. Plaintiffs filed a supplemental brief addressing these issues. (Doc. No. 31).

## II. STANDARD OF REVIEW

Rule 55(b)(2) does not set forth a standard to be applied in determining when a party is entitled to a judgment by default. The decision to enter a default judgment under Rule 55(b)(2) lies in the district court's sound discretion. *See Am. Auto. Ass'n v. Dickerson*, 995 F. Supp. 2d 753, 756 (E.D. Mich. 2014); *see also* 10A Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 2685 (4th ed.) ("This element of discretion makes it clear that the party making the request is not entitled to a default judgment as of right…"). In determining whether to enter a default judgment, courts typically consider factors such as:

> the amount of money potentially involved; whether material issues of fact or issues of substantial public importance are at issue; whether the default is largely technical; whether plaintiff has been substantially prejudiced by the delay involved; whether the grounds for default are clearly established or are in doubt; how harsh the effect of a default judgment may be; whether the default was caused by a good-faith mistake or excusable neglect; and whether the plaintiff has engaged in a course of delay.

10A Wright et al. at § 2685. Once default has been entered, the defaulting party is deemed to have admitted all of the well pleaded factual allegations in the complaint concerning liability. *Zinganything, LLC v. Imp. Store*, 158 F. Supp. 3d 668, 670 (N.D. Ohio 2016); *see* Fed. R. Civ. P. 8(b)(6) ("An allegation—other than one relating to the amount of damages—is admitted if a responsive pleading is required and the allegation is not denied."). However, the court must still determine whether those facts are sufficient to state a claim for relief with respect to each of the plaintiff's theories of liability. *Zinganything*, 158 F. Supp. 3d at 670.

Additionally, the district court must undertake an inquiry "to ascertain the amount of damages with reasonable certainty." *Vesligaj v. Peterson*, 331 F. App'x 351, 355 (6th Cir. 2009). It is the plaintiff's burden to establish the amount of damages it is entitled to recover from the party who is in default. *Flynn v. People's Choice Home Loans, Inc.*, 440 F. App'x 452, 457 (6th Cir.

3

Case 3:21-cv-00052   Document 32   Filed 07/11/22   Page 3 of 11 PageID #: 91

2011) (citing *Antoine v. Atlas Turner, Inc.*, 66 F.3d 105, 110 (6th Cir. 1995)). The Court may, but is not require to, conduct an evidentiary hearing on the issue of damages. *Vesligaj*, 331 F. App'x at 354; Fed. R. Civ. P. 55(b)(2).

### III. ANALYSIS

In light of the record as a whole, and based on the factors identified above, the Court finds that the relevant factors weigh, in principle, in favor of default judgment. The Court must still consider, however, whether the factual allegations of the Complaint support relief for Plaintiffs' claims under the FLSA and for breach of contract.[1] First, however, the Court must consider whether it has the authority to enter default judgment as to the claims of anyone other than the named plaintiff.

**A. Opt-in Plaintiffs**

Under Section 16(b) of the FLSA, 29 U.S.C. § 216(b), a named plaintiff may bring a cause of action on behalf of himself and other "similarly situated" employees who "consent in writing" to becoming party plaintiffs. *See O'Brien v. Ed Donnelly Enters., Inc*. 575 F.3d 567, 583 (6th Cir. 2009), abrogated on other grounds by *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153 (2016). "Section 216(b) establishes two requirements for a representative action: 1) the plaintiffs must actually be 'similarly situated,' and 2) all plaintiffs must signal in writing their affirmative consent to participate in the action." *Comer v. Wal-Mart Stores, Inc*., 454 F.3d 544, 546 (6th Cir. 2006).

A district court has broad discretion to implement procedures to ensure that these requirements are met. *See O'Bryant v. AMC Phones of N.C., Inc*., No. 2:19-cv-02378, 2020 WL 4493157, at * 5 (W.D. Tenn. Aug. 4, 2020) (citing *Hoffman-La Roche Inc. v. Sperling*, 493 U.S.

---

[1] The Complaint also includes a claim for unjust enrichment which is pleaded in the alternative to the claim for breach of contract. Because the Complaint states that there was an enforceable contract between the parties, the Court does not consider the claim for unjust enrichment.

165, 169 (1989)). Typically, the court will determine whether employees are "similarly situated" on motion for conditional and final certification of the collective action. *Bradford v. Logan's Roadhouse, Inc*., 137 F. Supp. 3d 1064, 1071 (M. D. Tenn. 2015). However, this procedure is not mandated by the FLSA. *See* 29 U.S.C. § 216.

The FLSA does not define the term "similarly situated," but courts have held that plaintiffs are similarly situated when they suffer from a single, FLSA-violating policy, and when proof of that policy or of conduct in conformity with that policy proves a violation as to all the plaintiffs. *Bradford*, 137 F. Supp. 3d at 1071; *Watson v. Advanced Dist. Servs., LLC*, 298 F.R.D. 558, 561 (M.D. Tenn. 2014). Employees may also be similarly situated if their claims are merely "unified by common theories of the defendants' statutory violations, even if the proofs of these theories are inevitably individualized and distinct." *Monroe v. FTS USA, LLC*, 860 F.3d 389, 398 (6th Cir. 2017) (citing *O'Brien*, 575 F.3d at 584-85)).

Plaintiff has not moved for certification of the FLSA collective action or provided briefing regarding whether the employees are similarly situated. Nevertheless, the declarations filed by each of the opt-in plaintiffs show that they are indeed similarly situated to each other and to the named plaintiff. Each of the declarants worked as an "over-the-road" truck driver for Road Scholar Staffing in 2020 and/or 2021. (Doc. Nos. 25-29). They each were hired pursuant to similar employment contracts which provided the same basis for compensation – that they would be paid for milage and would receive a safety and performance bonus for loads delivered undamaged, on time, and without any failed inspection or accidents. (*Id*., ¶ 3 (the cited paragraph in each declaration is identical)). The contracts also provided for other categories of pay – layover pay, detention pay, driver assist pay, and training pay. (*Id*.). Each of the employees states that there were some weeks when they were not paid at all and, therefore did not receive minimum wage for

5

those weeks. (*Id.*, ¶ 6). Named-plaintiff, Eric Williams, states that, in addition to the one week where he was not paid at all, for three weeks in which he received some pay he was paid less than minimum wage for the hours worked. (Doc. No. 25, ¶ 6). Based on these facts, the Court finds the opt-in plaintiffs are similarly situated according to Section 216(b).

Because the opt-in plaintiffs are similarly situated and have filed written consent to become party plaintiffs, they are properly considered plaintiffs in this case. Accordingly, the Court proceeds to consider whether the factual allegations of the Complaint support relief for the Plaintiffs' FLSA and breach of contract claims.

**B. FLSA Minimum Wage Violations**

An employer violates Section 206 of the FLSA when it fails to pay the federally mandated minimum wage of $7.25 per hour. 29 U.S.C. § 206. Plaintiffs have the burden to prove they performed work for which they were not properly compensated. *Monroe*, 860 F.3d at 398.

The Complaint alleges Plaintiffs are employees and Defendant is an employer covered by the FLSA and that Defendant failed to pay Plaintiffs the full $7.25 hour minimum wage in some workweeks. This allegation is supported by Plaintiffs' declarations stating that they were not paid at all for certain weeks in which they performed work. In addition, Williams states that there were three weeks in which he received a paycheck but was not paid the minimum wage for all hours worked. The allegations in the Complaint and Plaintiffs' declarations establish that Defendant violated the minimum wage provision of the FLSA. Plaintiffs are therefore entitled to recover unpaid wages plus an equal amount in liquidated damages for Defendant's FLSA violations. 29 U.S.C. § 216(b).

Plaintiffs must prove damages to "a reasonable degree of certainty." *Vesligaj*, 331 F. App'x at 355. The Court may, but is not require to, conduct an evidentiary hearing on the issue of

6

Case 3:21-cv-00052   Document 32   Filed 07/11/22   Page 6 of 11 PageID #: 94

those weeks. (*Id.*, ¶ 6). Named-plaintiff, Eric Williams, states that, in addition to the one week where he was not paid at all, for three weeks in which he received some pay he was paid less than minimum wage for the hours worked. (Doc. No. 25, ¶ 6). Based on these facts, the Court finds the opt-in plaintiffs are similarly situated according to Section 216(b).

Because the opt-in plaintiffs are similarly situated and have filed written consent to become party plaintiffs, they are properly considered plaintiffs in this case. Accordingly, the Court proceeds to consider whether the factual allegations of the Complaint support relief for the Plaintiffs' FLSA and breach of contract claims.

**B. FLSA Minimum Wage Violations**

An employer violates Section 206 of the FLSA when it fails to pay the federally mandated minimum wage of $7.25 per hour. 29 U.S.C. § 206. Plaintiffs have the burden to prove they performed work for which they were not properly compensated. *Monroe*, 860 F.3d at 398.

The Complaint alleges Plaintiffs are employees and Defendant is an employer covered by the FLSA and that Defendant failed to pay Plaintiffs the full $7.25 hour minimum wage in some workweeks. This allegation is supported by Plaintiffs' declarations stating that they were not paid at all for certain weeks in which they performed work. In addition, Williams states that there were three weeks in which he received a paycheck but was not paid the minimum wage for all hours worked. The allegations in the Complaint and Plaintiffs' declarations establish that Defendant violated the minimum wage provision of the FLSA. Plaintiffs are therefore entitled to recover unpaid wages plus an equal amount in liquidated damages for Defendant's FLSA violations. 29 U.S.C. § 216(b).

Plaintiffs must prove damages to "a reasonable degree of certainty." *Vesligaj*, 331 F. App'x at 355. The Court may, but is not require to, conduct an evidentiary hearing on the issue of

damages. *Id*. at 354; Fed. R. Civ. P. 55(b)(2). Here, the Court finds a hearing is not necessary because the declarations are sufficient to establish damages owed for the minimum wage violations.

In their declarations, each of the Plaintiffs provided an estimate of the total number of weekly hours worked and the number of weeks for which they did not receive any compensation. In addition, Williams provided the amount he was paid for certain weeks in which he received some compensation, but less than minimum wage for hours worked, and calculated the minimum wage owed for these weeks. These amounts are as follows:

| Employee | Weekly hours worked | Unpaid Weeks | Minimum Wage for Unpaid Weeks | Additional Minimum Wage Owed | Total |
|---|---|---|---|---|---|
| Eric Williams | 105 hours | 1 | $761.25 | $1,099.03 | $1,860.28 |
| Dolores Leger | 77 hours | 2 | $1,116.50 | $0 | $1,116.50 |
| Bobby Williams | 84 hours | 3 | $1,827.00 | $0 | $1,827.00 |
| Reginald Carter | 98 hours | 4 | $2,842.00 | $0 | $2,842.00 |
| Kevin Altenor | 98 hours | 4 | $2,842.00 | $0 | $2,842.00 |

(Doc. Nos. 25-29). The Court finds Plaintiffs are each entitled to these amounts, plus an equal amount in liquidated damages.

**C. Breach of Contract**

Plaintiffs assert the breach of contract claim as a supplemental claim to the FLSA claim pursuant to 28 U.S.C. § 1367 and *O'Brien*, 575 F.3d 567. *O'Brien* expressly determined that opt-in plaintiffs to a collective action may bring supplemental claims. Because the breach of contract claim arises out of the same controversy as the FLSA claim, it is properly before the Court.

7

Plaintiffs' claims for breach of contract arise under employment contracts. (Doc. No. 1, ¶¶ 37-43). These contracts have not been filed with the Court. However, Plaintiffs have generally described the compensation provisions in the contract – claiming they are entitled under the contracts to compensation including milage pay, certain bonuses, layover pay, detention pay, driver assist pay, and "other compensation." (*Id.*, ¶ 12; *see also*, declarations filed at Doc. Nos. 25-29). Each Plaintiff claims he or she was never paid the full amount owed under the employment contracts. (Doc. Nos. 25-29). Every Plaintiff identically states, "My paychecks were also always short based on my milage and other forms of compensation I was supposed to receive for my work based on my agreement with Road Scholar." (*Id.*, ¶ 7 (identical in each declaration)).

This Court is without sufficient information to determine which state's law applies to the breach of contract claim. Tennessee applies the *lex loci contractus* rule for claims based on contract. *Vantage Tech., LLC v. Cross*, 17 S.W.3d 637, 650 (Tenn. Ct. App. 1999). Under this rule, a contract is presumed to be governed by the law of the jurisdiction in which it was executed, absent contrary intent. *Id*. Here, Plaintiffs have not stated where the contract was executed or whether the contract had a choice of law provision. Defendant is located in Tennessee, but none of the Plaintiffs are currently in Tennessee and it is unclear where the Plaintiffs worked for Defendant. Because the essential elements of a breach of contract claim are virtually identical across jurisdictions, the Court will apply the law of Tennessee.

In Tennessee, a claim for breach of contract requires: "(1) the existence of an enforceable contract; (2) nonperformance amounting to a breach of the contract; and (3) damages cause by the breach of the contract." *C&W Asset Acquisition, LLC v. Oggs*, 230 S.W.3d 671, 676-77 (Tenn. Ct. App. 2007). The Court finds Plaintiffs have adequately pleaded facts to support a finding of liability on their claim for breach of contract.

In support of their claim for damages for the breach of contract claim, Plaintiffs provide declarations in which each Plaintiff estimates the amount the paychecks were "typically short." Each Plaintiff claims to be owed this typical shortage for the number of weeks he or she received a paycheck. In addition, as indicated above, Plaintiffs each state that they did not receive any pay for between one and four weeks during which they performed work. Plaintiffs also provided estimates of the amounts owed under the contract for these weeks. These amounts are as follows:

| Employee | Total Paychecks Received | Shortage Per Week / Total | Unpaid Weeks | Amount Owed Under Contract for Unpaid Weeks[2] | Total[3] |
|---|---|---|---|---|---|
| Eric Williams | 21[4] | $1,000 / $21,000 | 1 | $2,500 | $23,500 |
| Dolores Leger | 9 | $200 / $1,800 | 2 | $1,948 ($748, $1,200) | $3,748 |
| Bobby Williams | 5 | $300 / $1,500 | 3 | $4,500 ($1,500 per week) | $6,000 |
| Reginald Carter | 32 | $400 / $12,800 | 4 | $5,000 | $17,800 |
| Kevin Altenor | 8 | $200 / $1,600 | 4 | $6,938.25 ($1,446.60, $2,402.15, $1,589.50, $1,500) | $8,538.25 |

Though the declarations are mathematically precise, they provide no explanation of how each declarant determined the "typical shortage" claims. On this record, the Court finds Plaintiffs have not adequately establish the above amounts should be awarded as damages for Defendant's breach of contract. While the amount of damage need not be exact, neither can the damages be speculative. Moreover, the Court has an obligation to ensure that there is a legitimate basis for a damages award and may award damages on default judgment only where the record adequately

---

[2] Before subtracting amounts claims as unpaid minimum wage.

[3] Plaintiffs agree this amount should be reduced by the amounts claimed for unpaid minimum wage.

[4] Mr. Williams appears to have double counted the one week he did not receive a paycheck.

9

supports a basis for the award. *Zinganything, LLC v. Import Store*, 158 F. Supp. 3d 668, 675-76 (E.D. Ohio 2016).

To be sure, Plaintiffs have provided some evidence in the form of their estimates, but these estimates are completely devoid of any explanation as to how they were reached. Plaintiffs have not provided copies of the employment contract showing how compensation was to be calculated, nor have they provided any other explanation as to how they determined the amounts they were underpaid each week or even what categories of pay they should have received but did not. Were they regularly shorted pay for milage? Bonuses? One of the other categories of pay? For example, Eric Williams estimates that he was "typically short about $1,000 each check" for 22 weeks, but he does not provide any evidence from which the court could conclude that this is a reasonable estimate. Nor do any of the other Plaintiffs provide such information. The Court also notes that there does not appear to be a correlation between the hours worked and the estimated weekly shortage. Reginald Carter worked only about an hour less per day than Eric Williams, yet his pay checks were short $400 per week while Williams's estimated weekly shortage was more than double this amount.

The Court is sympathetic to the difficulty of establishing an exact amount of damages due to many of the relevant records being in Defendant's possession. However, given the exactness of the amounts Kevin Altenor claimed for missing paychecks ($1,446.60, $2,402.15, $1,589.50), it appears additional detail regarding the damages claims is obtainable. In any event, the Court does not require an exact accounting of damages. Under these circumstances, where the defendant is in possession of the relevant records, it is not unreasonable for Plaintiffs to estimate their damages. Even so, they must provide some basis from which the Court can conclude that the estimate is

reasonable and there is a legitimate basis for the damages award. This record fails to provide such basis.

Accordingly, the Court will not grant damages for the breach of contract claim at this juncture.

## IV. CONCLUSION

For the foregoing reasons, Plaintiffs' Motion for Entry of Default Judgement (Doc. No. 23) is **GRANTED** in part. The Court will enter default judgment on the FLSA claims for liability and damages and on the breach of contract claim for liability only. Plaintiffs may file additional evidentiary support for their claimed damages on or before August 1, 2023. The Court will enter a final order after that date.

It is so **ORDERED**.

_____
WILLIAM L. CAMPBELL, JR.
UNITED STATES DISTRICT JUDGE